IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REGINALD JACKSON, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 11-6890 |
| | : | |
| MAJOR THOMAS DOHMAN, CAPTAIN | : | |
| ETTA WILLIAMS, and LIEUTENANT | : | |
| WILLIAM E. RADLE, | : | |
| Defendants. | : | |

DuBois, J.                                                                                                 February 28, 2013

**M E M O R A N D U M**

## I. INTRODUCTION

This case arises out of a series of events in February 2010, while pro se plaintiff Reginald Jackson, an inmate at the State Correctional Institution at Greene ("SCI-Greene"), was housed at the State Correctional Institution at Graterford ("SCI-Graterford"). In the Complaint and Amended Complaint plaintiff asserts claims against defendants Major Thomas Dohman, Captain Etta Williams, and Lieutenant William Radle under 42 U.S.C. § 1983 for harassment and retaliation in violation of his rights under the First, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

Defendants move to dismiss plaintiff's Fifth, Eighth, and Fourteenth Amendment claims and any claims asserted against defendants in their official capacities. Defendants do not seek to dismiss plaintiff's First Amendment retaliation claim against defendants in their individual capacities.

1

## II. BACKGROUND

### A. Factual Background[1]

While at SCI-Graterford in February 2010, plaintiff claims that Captain Williams gave notice that inmates would not be allowed to carry books and folders through the Main Gate of the prison. (Compl. 9.) Plaintiff filed a formal complaint about this new restriction, claiming that he needed to carry his folder and books through the Main Gate to the prison library for work. (Id. 9-10.) Although the warden allegedly informed plaintiff that the restriction was invalid, Captain Williams continued to enforce it and conducted unnecessary searches of plaintiff. (Id. at 10.)

On February 17, 2010, Captain Williams searched plaintiff at the Main Gate and confiscated his work folder, which contained documents from the library. (Id.) After plaintiff told Captain Williams and Major Dohman that he had filed a formal complaint about these searches with the warden, the two defendants instructed officers to search plaintiff's cell for contraband. (Id. 10-11.) Captain Williams and Major Dohman then told plaintiff they would continually search his cell until they found contraband warranting a misconduct charge that would result in the loss of his job in the library and placement in the Restricted Housing Unit. (Id. 11.) Captain Williams also attempted to have plaintiff fired from his job at the library, but plaintiff's librarian supervisors refused to do so. (Id.)

Plaintiff's cell was searched a second time on February 18, 2010 and a third time on February 23, 2010, at which time a small amount of scented body oil and an ink pad were confiscated. (Id. at 12.) Lieutenant Radle subsequently offered to dismiss the write-up for the contraband found in plaintiff's cell in exchange for information regarding illegal contraband two

---

[1] As required on a motion to dismiss, the Court takes all plausible factual allegations contained in plaintiff's Complaint and Amended Complaint to be true.

librarian supervisors were suspected of bringing into the prison. (Id.) Plaintiff stated that "he had no knowledge of any illegal activity by any of the librarians." (Id.) Plaintiff's refusal to give information was based on his fear of "the risk of placing his life in danger with other prisoners and guards who would eventually learn that plaintiff had become an informant for the defendants." (Am. Compl. 1.) Lieutenant Radle threatened plaintiff with transfer to a distant prison if he did not cooperate. (Compl. 12.) Plaintiff was then given a misconduct charge for the scented body oil and placed in the Restricted Housing Unit. (Id. at 13) Plaintiff attempted to file grievances regarding the misconduct charge, which he claimed to be falsified, but the Restricted Housing Unit Officer failed to submit them to the Grievance Coordinator. (Id. 4.) Finally, plaintiff was transferred to the SCI-Greene, far from his family and at which he was forced to "double cell" for the first time in sixteen years. (Id. 14.)

   B.  Procedural Background

Plaintiff filed the instant suit, claiming harassment and retaliation in violation of the First Amendment in the Complaint. (Id. 16.) Plaintiff subsequently filed an Amended Complaint, which clarified that he additionally asserted retaliation claims in violation of the Fifth, Eighth, and Fourteenth Amendments. (Am. Compl. 1.) Defendants have now filed the instant amended motion to dismiss. (Doc. No. 21)

**III. LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a civil plaintiff must allege facts that "'raise a right to relief above the speculative level.'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

3

To assert a viable retaliation claim, plaintiff must show that (1) the conduct leading to the alleged retaliation was constitutionally protected; (2) plaintiff thereafter suffered some "adverse action" at the hands of prison officials; and (3) the exercise of constitutionally protected conduct was a substantial or motivating factor in the adverse action. See Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001).

## IV. DISCUSSION

Plaintiff asserts retaliation claims based on the First, Fifth, Eighth, and Fourteenth Amendments. Defendants seek the dismissal of the Fifth, Eighth, and Fourteenth Amendment claims and any claims asserted against defendants in their official capacities. Defendants do not seek to dismiss plaintiff's First Amendment retaliation claim against defendants in their individual capacities. Each argument will be addressed in turn.

### A. Fifth Amendment Retaliation Claim

Plaintiff's Fifth Amendment relation claim is based on his allegation that defendants retaliated against him for exercising his right to remain silent when questioned about an internal investigation. Defendants argue that the claim fails because plaintiff did not assert his right to remain silent when Lieutenant Radle questioned him about illicit activity by the library supervisors. Instead, plaintiff answered the question by denying any knowledge. Plaintiff counters that his statement that he had no knowledge about contraband in the library was an exercise of his Fifth Amendment right.

"It is well established … that the Fifth Amendment privilege against self-incrimination is not self-executing and thus must be claimed when self-incrimination is threatened." United States v. Frierson, 945 F.2d 650, 660 (3d Cir. 1991); see also Berghuis v. Thompkins, 130 S. Ct. 2250, 2263 (2010). Plaintiff admits he did not remain silent and instead answered Lieutenant

4

Radle's question in the negative. (Compl. 12.) Thus, he cannot show that he engaged in constitutionally protected conduct, and his retaliation claim based on the Fifth Amendment is dismissed.

  B. <u>Eighth Amendment Retaliation Claim</u>

Plaintiff's Eighth Amendment retaliation claim is also based on his refusal to participate in the prison's internal investigation. Defendants argue that plaintiff's refusal to cooperate in an internal investigation is not constitutionally protected conduct, citing <u>Walker v. Campbell</u>, 2010 WL 2891488 (W.D. Pa. May 4, 2010). In <u>Walker</u>, a prisoner refused to give information in connection with an investigation into misconduct by prison library personnel and was threatened with a misconduct for his refusal. The Court, in dismissing the Eighth Amendment retaliation claim, reasoned that the prisoner had not engaged in constitutionally protected conduct by refusing to cooperate because "it cannot be said that the mere asking for an inmate's help in an internal investigation constitutes deliberate indifference such as to rise to the level of an Eighth Amendment violation." <u>Walker</u>, 2010 WL 2891488, at *7.

Plaintiff counters that his refusal to cooperate with Lieutenant Radle's investigation was constitutionally protected conduct, and he cites <u>Cooper v. Beard</u>, 2006 WL 3208783 (E.D. Pa. Nov. 2, 2006) for support. In <u>Cooper</u>, a prisoner was repeatedly asked and pressured to participate in a sting operation against suspected corrupt prison guards. The prisoner refused, fearing that he would be in danger from violence from other inmates if they knew of his participation, and prison officials retaliated against him. The Court concluded that the prisoner had sufficiently alleged constitutionally protected conduct, reasoning that "[p]rison officials may not constitutionally require an inmate to participate actively in a sting operation against corrupt prison guards. If inmates have a constitutional right not to be labeled a 'snitch,' plaintiff's refusal

5

to become one by participating in an internal sting operation is certainly constitutionally protected activity." Cooper, 2006 WL 3208783, at *12.

However, the Cooper court distinguished the type of affirmative conduct at issue there from the type of request at issue in this case: "*Rather than just being asked questions about a prior event*, here, plaintiff was requested to assist affirmatively prison officials in the investigation of allegedly corrupt prison guards by participating in a sting operation." Cooper, 2006 WL 3208783, at *10 (emphasis added). Plaintiff's refusal to give information to Lieutenant Radle in connection with an internal investigation is akin to the refusal in Walker, and as such the refusal does not constitute constitutionally protected conduct. Therefore, plaintiff's retaliation claim based on the Eighth Amendment is dismissed.

Defendants also argue that plaintiff cannot predicate his Eighth Amendment retaliation claim merely on threats by defendants. To the extent that plaintiff's Eighth Amendment claim is based on threats by Captain Williams or Lieutenant Radle, such threats cannot sustain such a claim. See Booth v. King, 228 F. App'x 167, 172 (3d Cir. 2007) ("absent any allegation of physical harm, the defendants' verbal threats do not amount to a constitutional violation").

C. Fourteenth Amendment Retaliation Claim

Plaintiff's Fourteenth Amendment claim is based on his allegation that prison officials did not process his grievances from the Restricted Housing Unit properly. However, "prison inmates do not have a constitutionally protected right to a grievance process." Jackson v. Gordon, 145 F. App'x 774, 777 (3d Cir. 2005). Therefore, plaintiff's claim based on the Fourteenth Amendment is dismissed.

D. Eleventh Amendment Immunity

Finally, defendants argue that the Eleventh Amendment bars any claims against defendants

in their official capacities.  Plaintiff concedes this argument, but notes that he also sued defendants in their individual capacities.  (Compl. 15.) ("All defendants, individually and as supervisors directly participated in violations …").  To the extent that defendants' motion seeks dismissal of the remaining First Amendment retaliation claim against defendants in their official capacities, the motion is granted.  See Lavia v. Pennsylvania, Dept. of Corr., 224 F.3d 190, 195 (3d Cir. 2000).

## V. CONCLUSION

For the reasons set forth above, defendants' Amended Motion to Dismiss the Amended Complaint is granted, and plaintiff's claims based on the Fifth, Eighth, and Fourteenth Amendments and the remaining First Amendment claim against defendants in their official capacities are dismissed with prejudice.  Plaintiff's First Amendment retaliation claim against defendants in their individual capacities will be allowed to proceed.

An appropriate order follows.